IN THE UNITED STATES DISTRICT COURT OF ILLINOIS
FOR THE CENTRAL DISTRICT
URBANA DIVISION

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, a Connecticut State Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> RICHTER-TAYLOR CONSTRUCTION SPECIALISTS, INC., an Illinois corporation BRIAN TAYLOR, an Illinois citizen, BELINDA RICHMOND TAYLOR, an Illinois citizen, BRAD TAYLOR, an Illinois citizen, JEAN A. TAYLOR, an Illinois citizen, LINDA L. RICHTER, a Missouri citizen, and RONALD R. RICHTER, a Missouri citizen, <br><br> Defendants. | Case No. |

## COMPLAINT FOR CONTRACTUAL INDEMNITY

Hartford Fire Insurance Company, ("Hartford" or "Surety"), by and through its attorney, T. Scott Leo, sets forth the following complaint against defendants, Richter-Taylor Construction Specialists, Inc. ("Richter"), Brian Taylor, Belinda Richmond Taylor, Brad Taylor, Jean A. Taylor, Linda L. Richter, and Ronald R. Richter, hereinafter collectively referred to as "Defendants":

### PARTIES

1. Hartford is a Connecticut corporation with its principal place of business in the City of Hartford in the state of Connecticut, and is a citizen of the state of Connecticut.

2. Richter is an Illinois corporation with its principal place of business in the City of Greenville in the state of Illinois.

3. Defendant Brian Taylor is a resident of Urbana, Illinois and an Illinois citizen.

4. Defendant Belinda Richmond Taylor is a resident of Urbana, Illinois and an Illinois citizen.

5. Defendant Brad Taylor is a resident of Belleville, Illinois and an Illinois citizen.

6. Defendant Jean A. Taylor is a resident of Belleville, Illinois and an Illinois citizen.

7. Defendant Linda L. Richter is a resident of St. Peters, Missouri and a Missouri citizen.

8. Defendant Ronald R. Richter is a resident of St. Peters, Missouri and a Missouri citizen.

**JURISDICTION AND VENUE**

9. This court has jurisdiction over this cause under 28 U.S.C. § 1332(a)(1) in that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00, and is between citizens of different states.

10. Venue is proper in this Court under 28 U.S.C. § 1391(a)(1) because at least one Defendant resides in this District.

**FACTS COMMON TO ALL COUNTS**

11. Richter-Taylor Construction Specialist, Inc. ("Richter") entered into a construction contract with the project owner, Board of Education, Neoga CUSD

("Neoga") to provide labor and materials on the project commonly referred to as New School Building, Neoga CUSD No. 3. (Hereinafter, this construction project will be referred to as the "Project").

12. In accordance with the Illinois Public Construction Bond Act, 30 ILCS 550/1,2 *et.seq.* (the "Bond Act"), Richter was required to obtain and provide a payment and performance surety bond for the Project to guarantee Richter's performance obligations under the contracts and to ensure the payment obligations of Richter to its subcontractors and materialmen that it engaged for the Project, subject to the terms of the bonds, the contracts, the Bond Act, and the law. Pursuant to the request of Richter, Hartford, as surety, issued a payment and performance bond (the "Bonds") to the Obligee, on behalf of Richter, as principal for the Project.

13. As a condition for Hartford's issuance of bonds on behalf of Richter, Hartford first required that the Defendants enter into and sign a General Indemnity Agreement ("Indemnity Agreement") with Hartford on or about February 19, 2001. The Indemnity Agreement requires the Defendants to indemnify and hold Hartford harmless, in part, from all liability under the bonds it issues on behalf of Richter. Specifically, the Indemnity Agreement provides, in relevant part, the following:

> III. The Indemnitors will indemnify and hold the Surety harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interest and attorney's fees which the Surety incurs or sustains (1) because of having furnished any Bond, or (2) because of the failure of an Indemnitor to discharge any obligations under the Agreement, or (3) in enforcing any of the provisions of this Agreement.
>
> IV. On demand by the Surety, the Indemnitors will pay the Surety the amount deemed necessary by the Surety to protect itself from all losses or expenses as soon as the Surety determines that liability exists, whether or not the Surety has made any payment or created any reserve.

(A true and accurate copy of the Indemnity Agreement is attached hereto as Exhibit "A", ¶ III, IV).

14. Richter further agreed under the terms of the Indemnity Agreement:

V. Vouchers or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be *prima facie* evidence of the existence and extent of the liability of the indemnitors to the Surety.

(Exhibit "A, ¶ V).

15. Hartford received numerous payment bond claims from alleged unpaid subcontractors and suppliers of Richter which furnished labor and/or materials to the Project.

16. Neoga asserted a claim against the performance bond alleging Richter failed to complete the contract work. The unfinished or deficient work was compiled into a punch list. Hartford discharged its obligation to Neoga by taking over the contract and completing the project by hiring contractors to perform the punch list work.

17. Defendants were notified on November 5, 2004 of the bond claims and requested that the Defendants indemnify and hold Hartford harmless from the pending claims. (A true and accurate copy of the November 5, 2004 letter to Defendants is attached hereto as Exhibit "B").

18. To assist in Hartford's investigation of the Neoga claims on the Project, Hartford engaged the law firm of Leo & Weber, P.C. and the construction consulting firm of Construction Consulting and Disbursement Services, Inc.

4

19. After completing its investigation, in order to discharge its Bond obligations, Hartford paid a total of $112,125.15 to payment claimants and for completion of the Project.

20. On or about January 15, 2007 a letter was sent to Defendants requesting reimbursement to Hartford from the Defendants for the amounts paid by Hartford in the amount of $112,125.15 plus additional costs. Defendants responded by letter on or about January 28, 2007 that they had no intention of reimbursing Hartford whatsoever. (A true and accurate copy of the January 28, 2007 letter is attached hereto as Exhibit "C").

21. Despite demands, to date, Richter has not indemnified Hartford for claim payments made by Hartford and for its costs and expenses in relation to the Bonds issued on behalf of Richter.

22. As of February 1, 2007, Hartford has incurred $112,125.15 plus costs and expenses in (a) investigating and handling Bond claims and (b) in enforcing the terms of the Indemnity Agreement which costs and expenses are recoverable under the Indemnity Agreement.

23. After February 1, 2007, Hartford has and will continue to incur costs and expenses that are recoverable under the Indemnity Agreement.

### Count I
### (Breach of Contract)

1-23. Harford adopts and re-alleges paragraphs 1 through 23 for paragraphs 1-23 of Count I as though fully set forth herein.

24. The Defendants are obligated to indemnify Hartford from all losses in connection with the bonds and in enforcing the terms of the Indemnity Agreement. *See* Exhibit "A".

25. Despite Hartford's demand, the Defendants have breached the agreement between the parties by failing and refusing to indemnify and hold Hartford harmless from the bond claims.

26. Hartford has been damaged by the Defendants' material breach of the Indemnity Agreement in the amount of $112,125.15 plus attorney and consultant's fees.

WHEREFORE, Hartford Fire Insurance Company prays the court enter an Order providing judgment against Richter-Taylor Construction Specialist, Inc., Brian K. Taylor, Belinda Richmond Taylor, Brad L. Taylor, Jean A. Taylor, Linda L. Richter and Ronald R. Richter jointly and severally, in the amount of $112,125.15 plus costs and expenses; and for such further relief as the Court deems just and appropriate.

### Count II
### Common Law Reimbursement

1-23. Hartford adopts and re-alleges paragraphs 1 through 23 for paragraphs 1-23 of Count II as though fully set forth herein.

24. Hartford is secondarily liable for any and all claims made against its Bonds. Under the terms of the underlying agreement(s) that the Bonds guarantee, Richter is the party which is primarily responsible for payment of a claim(s), and owes a duty to reimburse Hartford for payments made in discharging the obligations under the bond..

25. Hartford has satisfied the obligations of its principal, Richter, and as such Hartford is entitled to be reimbursed from its principal, Richter.

6

WHEREFORE, Hartford Fire Insurance Company requests this Court to enter an order entering judgment in favor of Hartford and against Richter-Taylor Construction Specialists, Inc., as of February 1, 2007 in the amount of $112,125.15 and for such other relief as the Court deems just.

Respectfully submitted:

**Hartford Fire Insurance Company**

By: ___s/ T. Scott. Leo___
        One of its Attorneys

T. Scott Leo, ARDC #: 3127352
Leo & Weber, P.C.
One N. LaSalle Street, Suite 3600
Chicago, Illinois 60602
Telephone: (312) 857-0910
Facsimile: (312) 857-0910

## General Indemnity Agreement — THE HARTFORD

One or more of the undersigned, herein called Indemnitors, has requested or may request Hartford Fire Insurance Company or any of its insurance company affiliates, herein individually and collectively called Surety, to furnish, procure or continue contracts of suretyship, guaranty or indemnity, or other obligatory instruments, herein called Bonds, on behalf of any one or more of the Indemnitors.

By the execution of this Agreement, the Indemnitors expressly warrant their material or beneficial interest in such Bonds, and in consideration of the furnishing, procuring or continuing of such Bonds, and other good and valuable consideration, the Indemnitors hereby jointly and severally agree to the following:

### I

The Surety may decline to execute any Bond without incurring any liability to any Indemnitor. This includes Bonds required in connection with the performance of a contract awarded under a proposal for which the Surety has executed a bid or proposal bond, a bid letter, a consent of surety or an agreement of surety.

Such declination by the Surety shall not affect the liability of any Indemnitor to the Surety relating to other Bonds or to this Agreement.

### II

This Agreement applies to all Bonds executed by the Surety (1) on which any Indemnitor either acts solely or as a member of a partnership or a joint venture, or (2) in connection with which any Indemnitor acts as a silent partner or a silent joint venturer.

If the Surety procures the execution of Bonds by other sureties, or executes Bonds with cosureties, the provisions of this Agreement shall inure to the benefit of such other sureties or cosureties as their interests may appear.

### III

The Indemnitors will indemnify and hold the Surety harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interest and attorney's fees, which the Surety incurs or sustains (1) because of having furnished any Bond, or (2) because of the failure of an Indemnitor to discharge any obligations under this Agreement, or (3) in enforcing any of the provisions of this Agreement.

### IV

On demand by the Surety, the Indemnitors will pay the Surety the amount deemed necessary by the Surety to protect itself from all losses or expenses as soon as the Surety determines that liability exists, whether or not the Surety has made any payment or created any reserve.

### V

The Indemnitors shall be liable to the Surety for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by the Surety in the belief that either (1) the Surety was or might be liable therefor, or that (2) they were necessary or advisable to protect the Surety's rights or to avoid or lessen the Surety's liability.

Vouchers or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety.

### VI

The Surety shall have access to all the books, records and other documents of the Indemnitors during regular business hours or at any other reasonable time until the liability of the Surety under each Bond is terminated. Financial institutions, materialmen, suppliers, bond obligees and all other persons and organizations, including suppliers of legal and accounting services, are authorized to furnish the Surety any information requested including the status and condition of work under any contracts being performed by any Indemnitor and the financial status of such contracts.

### VII

With respect to any Bond issued on behalf of an Indemnitor, all Indemnitors assign, transfer and convey to the Surety:

(b) An Indemnitor's failure, refusal or inability to pay any bills or satisfy any debts incurred in connection with the performance of a contract guaranteed by any Bond;

(c) An Indemnitor's failure, refusal or inability to satisfy any condition of any Bond or to comply with any term or provision of this Agreement;

(d) An Indemnitor's failure to pay when due, any debt owed to the Surety;

(e) An Indemnitor's assignment for the benefit of creditors, or the appointment of, or the application for the appointment of, a receiver or trustee for any Indemnitor whether insolvent or not;

(f) A proceeding which prevents or interferes with an Indemnitor's use of any of the supplies, tools, plant, machinery, equipment or other materials referred to in paragraph B, of this Section;

(g) The death, absconding, disappearance, incompetency, imprisonment or felony conviction of any Indemnitor.

In the event these assignments become operative, the Indemnitors authorize the Surety, at its sole discretion and to the extent it deems appropriate, but without any obligation on its part:

(i) To assert and pursue all of the assigned, transferred or conveyed rights, actions, causes of action, claims and demands;

(ii) To take possession of all or part of the work plus all associated supplies, tools, plant, machinery, equipment, materials, records, drawings and plans, and to arrange for the completion of such work, or to relet, or consent to the reletting or completion of, the contract secured by any Bond.

### VIII

If a Bond is executed in connection with the performance of a contract, the entire contract price shall be dedicated to the satisfaction of the conditions of the bonded contract. All money paid, or any securities, warrants, checks or evidences of debt, plus any proceeds thereof, given under the bonded contract shall be impressed with a trust in the hands of the Indemnitors in favor of the Surety for the purpose of satisfying the conditions of the bonded contract and shall be used for no other purpose until such conditions have been fully satisfied.

### IX

The Surety, without notice to the Indemnitors and despite any increase in their liability, may agree to either (1) changes in Bonds or bonded contracts or the plans or specifications relating to them, or (2) the addition of Indemnitors by addendum to this Agreement.

### X

The Indemnitors expressly waive any notice of the following to which they may be entitled notwithstanding any defenses they otherwise may have been able to assert:

(a) The execution of any Bonds or the refusal to execute any Bonds;

(b) Defaults under contracts or any acts which might result either in claims, or in liabilities of the Surety under any Bonds.

(c) Any act, fact or information concerning or affecting the rights or liabilities of the Surety or any Indemnitor.

### XI

The Surety may sell property assigned to or deposited with it without incurring any liability. The sale may be public or private and with or without notice of the time or place thereof. When all liability of the Surety under all Bonds is terminated, any balance remaining after the Surety has reimbursed itself for all liability, losses and expenses shall be returned to the Indemnitors.

### XII

The Indemnitors irrevocably constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all rights of the Indemnitors assigned to the Surety, and, in the name of the Indemnitors, to execute and deliver any other assignments or documents deemed necessary by the Surety to effectuate and exercise the rights given it under this Agreement including, but not limited to, the right to endorse the name of any Indemnitor on checks, drafts or evidences of debt.


EXHIBIT A

The Surety may adjust, settle or compromise any claim, demand, suit or judgment upon any Bond. If requested by an Indemnitor, the Surety shall litigate such claim or demand, or defend such suit or appeal from such judgment, provided that the Indemnitor deposits with the Surety, at the time of such request, collateral satisfactory to the Surety to be used to pay any judgment rendered plus interest, costs, expenses and fees, including those of the Surety.

### XV.

This is a continuous Agreement which remains in full force and effect as to every Bond issued by the Surety. However, participation in this Agreement by any Indemnitor may be terminated as to future Bonds by written notice to the Surety which shall become effective on the date of written acceptance thereof by the Surety. Such termination shall not relieve any Indemnitor from liability assumed prior to such termination, nor shall it affect the liability of any other Indemnitor.

### XVI.

The Surety's rights under this Agreement are cumulative with, and in addition to, all other rights of the Surety, however derived. The Surety is not required to enforce or exhaust its rights or remedies against any one Indemnitor before asserting its rights against any other Indemnitor.

### XVII.

If for any reason this Agreement is invalid as to any Indemnitor, or if any Indemnitor's liability under this Agreement is terminated, the remaining Indemnitors shall nevertheless be liable for the full amount of liability, losses and expenses which the Surety may sustain or incur.

### XVIII.

This Agreement constitutes a Security Agreement to the Surety and also a Financing Statement enforceable under the Uniform Commercial Code now or hereafter in force in any jurisdiction.

### XIX.

For the purposes of recording this Agreement, an authenticated true copy hereof shall be regarded as an original.

### XX.

The Indemnitors have read and understand this Agreement. No separate agreements or understandings change the terms of this Agreement, and no terms may be waived or changed without the Surety's written approval.

Dated and effective this ____19th____ day of ____February____ 19 2001

NOTE: Corporate signatures and attestations must be by corporate officers empowered to sign and attest. Attestations must be by corporate officers other than those signing. Witnesses' signatures must be by persons not a party to, or a relative of a party to, this Agreement.

**INDEMNITORS**

Attest: _[signature] Belinda Richter Taylor, Corporate Secretary_ (Title)

Richter-Taylor Construction Specialist, Inc. (Corporate Name) (Seal)
By: _[signature]_ (Title)
Brian K. Taylor, President

Attest: _____ (Title)
(Corporate Name) (Seal)
By: _____ (Title)

Attest: _____ (Title)
(Corporate Name) (Seal)
By: _____ (Title)

Attest: _____ (Title)
(Corporate Name) (Seal)
By: _____ (Title)

Attest: _____ (Title)
(Corporate Name) (Seal)
By: _____ (Title)

|   |   |
|---|---|
| [illegible/redacted] | (Partnership Name) |
| Witness: | By: _____ (Individually and as Partner) |
|   | _____ (Partnership Name) |
| Witness: _____ | By: _____ (Individually and as Partner) |
| Witness: *Bill Richter[?]* | Brian K. Taylor (Individual Name) _____ (Signature) |
| Witness: *Karen S. Miller* | Belinda Richmond Taylor (Individual Name) _____ (Signature) |
| Witness: *Bill Richter[?]* | Brad L. Taylor (Individual Name) _____ (Signature) |
| Witness: *Bill Richter[?]* | Jean A. Taylor (Individual Name) _____ (Signature) |
| Witness: *Bill Richter[?]* | Linda L. Richter (Individual Name) _____ (Signature) |
| Witness: *Bill Richter[?]* | Ronald R. Richter (Individual Name) _____ (Signature) |

NOTARY ACKNOWLEDGMENTS
(All "Signatures" must be acknowledged by a Notary Public)
CORPORATE ACKNOWLEDGMENT

State of Illinois
County of Fayette           ss.

On the 19th day of February, 2001, before me personally appeared Brian K. Taylor, to me known, who being by me duly sworn did depose and say: that he resides in Greenville, Illinois; that he is the President of Richter-Taylor Construction Specialists, the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

OFFICIAL SEAL
BELINDA RICHMOND TAYLOR
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 05/01/01

_____ (Notary Public)

CORPORATE ACKNOWLEDGMENT

State of Illinois          ss.

[page cuts off]

**PARTNERSHIP ACKNOWLEDGMENT**

State of _____ } ss.
County of _____

On the _____ day of _____, 19____ before me personally appeared _____ of _____ (City/Town), _____ (State), described in and who executed the foregoing instrument, and he acknowledged to me that he executed the same as the act of said partnership and also as an individual indemnitor.

_____ (Notary Public)

**INDIVIDUAL ACKNOWLEDGMENT**

State of Illinois
County of Fayette } ss.

On the 20th day of February, 2001 before me personally appeared Brian K. Taylor and Belinda Richmond Taylor of Greenville (City/Town), Illinois (State), to me known and known to me to be the persons described in and who executed the foregoing instrument, and he acknowledged to me that he executed the same.

"OFFICIAL SEAL"
KAREN S. MILLER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5/17/2004

Karen S. Miller (Notary Public)

**INDIVIDUAL ACKNOWLEDGMENT**

State of Illinois
County of Fayette } ss.

On the 19th day of February, 2001 before me personally appeared Brad L. Taylor and Jean A. Taylor of Belleville (City/Town), Illinois (State), to me known and known to me to be the persons described in and who executed the foregoing instrument, and he acknowledged to me that he executed the same.

OFFICIAL SEAL
BELINDA RICHMOND TAYLOR
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/01/01

B. R. Taylor (Notary Public)

**INDIVIDUAL ACKNOWLEDGMENT**

State of Illinois
County of Fayette } ss.

On the 19th day of February, 2001 before me personally appeared Linda L. Richter and Ronald R. Richter of St. Peters (City/Town), Missouri (State), to me known and known to me to be the person described in and who executed the foregoing instrument, and he acknowledged to me that he executed the same.

OFFICIAL SEAL
BELINDA RICHMOND TAYLOR
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/01/01

B. R. Taylor (Notary Public)

**INDIVIDUAL ACKNOWLEDGMENT**

State of _____
County of _____ } ss.

On the _____ day of _____, 19____ before me personally appeared _____ of _____ (City/Town), _____ (State), and he acknowledged to me that he

**Construction Consulting & Disbursement Services, Inc.**

## Via Certified Mail Return Receipt Requested and First Class Mail

November 5, 2004

**RECEIVED**
NOV 0 8 2004
LEO & WEBER, P.C.

Brian K. Taylor
611 East Evergreen Court
Urbana, IL 61801

Belinda R. Taylor
611 East Evergreen Court
Urbana, IL 61801

Brad L. Taylor
35 N. 41st Street
Bellville, IL 62226

Jean A. Taylor
35 N. 41st Street
Bellville, IL 62226

Linda L. Richter
409 Lemonwood Dr.
St. Peters, MO 63376

Ronald R. Richter
409 Lemonwood Dr.
St. Peters, MO 63376

| | | |
|---|---|---|
| Principal | : | Richter-Taylor Construction Specialists, Inc. |
| Obligee | : | Board of Education, Neoga CUSD |
| Project | : | New School Building, Neoga CUSD No. 3 |
| Carrier | : | Hartford Fire Insurance Company |
| Bond # | : | 83 BCSAQ533 |
| Claim # | : | 5645 20715 |
| CCDS File No: | | 9483.1 |

900 Skokie Blvd.  Suite #208  Northbrook, IL 60062
Tel (847) 412-1861   Fax (847) 513-6692
ccds@tds.net

**EXHIBIT B**

Indemnitors Letter
November 5, 2004
Richter-Taylor/9483.1

Dear Indemnitors,

This letter provides each of you an update regarding the claims made against my client, Hartford Fire Insurance Company, performance bond and payment bond. Accompanying this letter is a booklet of tabbed documents. The documents are discussed in this report and, for ease of reference, the tabs are identified when a certain document is discussed.

**Performance Bond**

As each of you should know from my previous correspondence, the project owner, Board of Education, Neoga CUSD No. 3 ("Neoga") asserted a claim against the performance bond alleging Richter-Taylor failed to complete the contract work. The unfinished or deficient work is complied in a list known as a punch list. Neoga presented 3 punch lists which are found at tabs 1, 2, and 3.

Based upon discussions with Mr. Brian Taylor we understood Richter – Taylor disputed several punch list items. For example, the punch list states certain exterior gas piping should be painted to match the building's color and the concrete columns should be painted. We were successful in getting Neoga to agree those items were not included in the construction contract's scope and Neoga agreed to remove them from the list.

Enclosed under tabs 4, 5, and 6 are exhibits B.1, B.2 and B.3 respectively. These exhibits contain the same punch list items yet items we were successful in having removed are stricken through.

Hartford is working on discharging its obligation to Neoga by taking over the contract and causing completion by hiring contractors to perform the punch list work. Enclosed under tab 7 is a draft of the proposed Takeover Agreement between Hartford and Neoga. It has taken a long time to get Neoga to negotiate the Agreement yet we believe we are close to having all the language finalized. Importantly, Neoga commits the contract funds to Hartford which helps offset the costs to complete the work.

Enclosed under tab 8 is our $267,672.97 estimated cost to complete the work. Based upon this estimate and the $127,859.00 of remaining contract funds, the estimated loss on the performance bond is:

> Estimated completion cost   $267,672.97
> Remaining contract funds    ($127,859.00)
> Estimated Performance loss  $139,813.97

**Payment bond**

The following claims, which stem from Richter – Taylor failing to pay its subcontractors, have been asserted against Hartford's payment bond.

Indemnitors Letter
November 5, 2004
Richter-Taylor/9483.1

| subcontractor/supplier | claim amount | paid by Surety | balance |
|---|---|---|---|
| B&S Plumbing & Heating | $ 29,841.70 | | $ 29,841.70 |
| Bulte Company | $ 4,782.75 | $ 4,782.75 | $ - |
| Effingham Asphalt | $ 16,800.29 | | $ 16,800.29 |
| P.E.T. Feed & Supply | $ 16,317.00 | | $ 16,317.00 |
| Pro-Excavating | $ 32,677.20 | | $ 32,677.20 |
| Quality Service | $ 60,759.64 | | $ 60,759.64 |
| Sudkamp Plumbing Heating | $ 1,163.82 | | $ 1,163.82 |
| | $ 162,342.40 | | $ 157,559.65 |

Hartford continues to investigate these claims. Thus, in some cases, the claim amounts will change.

**Summary**

Based upon the foregoing information, the bond losses calculations are:

   Estimated performance bond loss $139,813.97
   Estimated payment bond loss   $162,342.40
   Estimation of Hartford's loss    $302,156.37

This calculation does not include consulting and legal fees.

Please contact me with any questions you may have. Otherwise, please respond in writing, by November 19, 2004, as to how and when each of you shall indemnify and hold harmless Hartford Fire Insurance Company. For your convenience, enclosed under tab 9 is the General Indemnity Agreement. Under this Agreement each of you agreed to indemnify and hold harmless Hartford Fire Insurance Company

Very truly yours,

Mark Lee

Cc: Stuart Jones - Hartford
   John Sebastian – Leo & Weber

Enclosure: Booklet w/ supporting documents, tabs 1-8

RichterIndemnUpdate04Nov04.ltr

January 28, 2007

Received
JAN 3 1 2007
CCDS, Inc.

Construction Consulting & Disbursement Services, Inc.
900 Skokie Blvd, Suite #100
Northbrook, IL 60062

Attn: Mark Lee

Re: Neoga School
    Bond # 83 BCSAQ533
    Claim 5645 20715

Dear Mr. Lee:

We are in receipt of your letter dated January 15, 2007 which requests a plan regarding how the principals of Richter-Taylor Const. Specialists, Inc. (RTCS) intend to reimburse Hartford the amount of $112,125.15 plus any additional costs.

After reviewing files in our possession we have concluded that, for numerous reasons, we have no intention of reimbursing Hartford whatsoever. The chief reasons for this conclusion are as follows:

1. RTCS was not afforded the opportunity to complete any work remaining on the Construction Contract.
2. No attempt was made to arrange a conference with RTCS even though RTCS was, at the time of termination, a corporation in good standing.
3. The surety has failed to promptly carry out their duties.
4. The fact that we have been led to believe that work was performed that was not consistent with the contract documents and that there is an attempt to hold RTCS responsible for the cost of such work which was outside of the requirements of the contract documents and/or required to complete design deficiencies, as requested by the owner.
5. That any proceeding under the bond had to be instituted within two (2) years after RTCS was declared in default by the owner.

Please review the above and confirm, within twenty (20) days of receipt, that this issue is closed or advise on how you will be proceeding. Additionally, upon reviewing the documents returned by your firm it appears that not all items were returned. Please return any remaining items which you may have in your possession regarding RTCS.

Sincerely,

Brian Taylor
611 E. Evergreen Ct.
Urbana, IL 61801

Cc: File, BLT, LLR



EXHIBIT C

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
HARTFORD FIRE INSURANCE COMPANY

### DEFENDANTS
RICHTER-TAYLOR CONSTRUCTION SPECIALISTS, INC., ET AL.

(b) County of Residence of First Listed Plaintiff: Connecticut
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Champaign
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
T. Scott Leo/Leo & Weber, P.C.
One N. LaSalle Street, Ste. 3600, Chicago, IL 60602   312/857-0910

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332(a)(1), diversity jurisdiction
Brief description of cause:
Contract indemnity action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 112,125.15
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE: 2/15/07
SIGNATURE OF ATTORNEY OF RECORD: s/ T. Scott Leo

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____