IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>RICHTER-TAYLOR CONSTRUCTION )<br>SPECIALISTS, INC., an Illinois Corporation, )<br>BRIAN TAYLOR, an Illinois citizen, )<br>BELINDA RICHMOND TAYLOR, )<br>an Illinois citizen, BRAD TAYLOR, an )<br>Illinois Citizen, JEAN A. TAYLOR, an )<br>Illinois citizen, LINDA L. RICHTER, a )<br>Missouri citizen, and RONALD R. )<br>RICHTER, a Missouri citizen, )<br>)<br>Defendants. ) | Case No. 07-2038 |

**MOTION TO DISMISS**
**(LACK OF SUBJECT MATTER JURISDICTION)**

*COMES NOW* the Defendants, Richter-Taylor Construction Specialists, Inc., Brian Taylor, Belinda Richmond Taylor, Brad Taylor, Jean A. Taylor, Linda L. Richter and Ronald R. Richter, by and through their attorney, James Richard Myers of LeFevre Oldfield Myers Apke & Payne Law Group Ltd., and for and in support of this motion state:

1. This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(1).

2. The Complaint alleges that subject matter jurisdiction exists with this Court under and by virtue of 28 U.S.C. § 1332(a)(1), which provides in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between (1) citizens of different States.

3. As interpreted by the courts of this nation, including the Supreme Court of the United States of America, subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) exists only when the citizenship of each plaintiff is diverse from the citizenship of each defendant. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 117 S.Ct. 467 (1996).

4. Pursuant to statute, a corporation is "deemed to be a citizen of any state by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

5. In the Complaint, the Plaintiff in this case alleges that its principal place of business is not in Illinois.

6. Contrary to this allegation, the Performance Bond entered into by the Plaintiff for the transaction forming the subject matter of the Complaint states that the principal place of business of Plaintiff is 4245 Meridian Parkway, Aurora, Illinois 60504. A true and correct copy of said Performance Bond is attached hereto as Exhibit A.

7. Having declared, for the purposes of transaction forming the subject matter of the Complaint, that its principal place of business is in Illinois, Plaintiff should not now be allowed to claim an out-of-state principal place of business in an attempt to meet the jurisdictional requirements of 28 U.S.C. § 1332(a)(1).

*WHEREFORE*, the Defendants pray that this Court enter an Order dismissing this cause for lack of subject matter jurisdiction and for any other such and further relief as the Court deems just and proper.

                                                  RICHTER-TAYLOR CONSTRUCTION
                                                  SPECIALISTS, INC.,
                                                  BRIAN TAYLOR,
                                                  BELINDA RICHMOND TAYLOR,
                                                  BRAD TAYLOR,
                                                  JEAN A. TAYLOR,
                                                  LINDA L. RICHTER and
                                                  RONALD R. RICHTER.

                                               By: /s/ James Richard Myers
                                                     James Richard Myers, their attorney

James Richard Myers
Attorney for Defendants
LeFevre Oldfield Myers Apke & Payne Law Group, Ltd.
303 S. Seventh St., P.O. Box 399
Vandalia, IL 62471
Telephone:  (618) 283-3034
Fax:  (618) 283-3037
File #11161/7901

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Motion was served upon the parties of record through the CM/ECF system.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

                                                             /s/ James Richard Myers
                                                                James Richard Myers

# Performance Bond

83BCSAQ533
In Duplicate

**CONTRACTOR (Name and Address):**
Richter-Taylor Construction
Specialist, Inc.
111 W. Birch
Brownstown, IL 62418

**SURETY (Name and Principal Place of Business):**
Hartford Fire Insurance Company
4245 Meridian Parkway
Aurora, IL 60504

**OWNER (Name and Address):**
The Board of Education of Neoga Community Unit School District
East 7th Street
Neoga, IL 62447

**CONSTRUCTION CONTRACT**
Date: September 23rd, 2000
Amount: $5,177,000.00
Description (Name and Location):
A New School Building for Neoga C.U.S.D No. 3; WHG Project No. 98027 NEO

**BOND**
Date (Not earlier than Construction Contract Date): March 2nd, 2001
Amount: $5,177,000.00
Modifications to this Bond:  ☒ None    ☐ See Page 3

**CONTRACTOR AS PRINCIPAL**
Company: (Corporate Seal)
Richter-Taylor Construction
Specialist, Inc.
Signature: _____
Name and Title: Bryan Taylor
President

**SURETY**
Company: (Corporate Seal)
Hartford Fire Insurance Company
Signature: _____
Name and Title: Ronald B. Geigler,
Attorney-In-Fact

(Any additional signatures appear on page 3)

**(FOR INFORMATION ONLY - Name, Address and Telephone)**
AGENT or BROKER:
Construction Bond Services, L.L.C.
1842 Sextant Drive
Worden, IL 62097

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):
Wilson Hodge & Groh Architects &
Engineers, Inc.
203 S. 28th Street
Mt. Vernon, IL 62864

EXHIBIT

1   The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2   If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3   If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

> 3.1   The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and
>
> 3.2   The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and
>
> 3.3   The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4   When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

> 4.1   Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or
>
> 4.2.   Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or
>
> 4.3   Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds, executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or
>
> 4.4   Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:
>
>> .1   After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or
>>
>> .2   Deny liability in whole or in part and notify the Owner citing reasons therefor.

5   If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6   After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

> 6.1   The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;
>
> 6.2   Additional legal, design professional and delay costs resulting from the Contractor's Default, and

resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7  The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

8  The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9  Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10  Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11  When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

12  DEFINITIONS

12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

**MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:**

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |